SHAHOOD, J.
Following a jury trial, Shaddy Whittaker was convicted of possession of a firearm by a convicted felon. Because of improper questioning of the defense witness and inappropriate closing argument, we reverse and remand for a new trial.
The police conducted a search of the home of appellant’s parents. After discov *738 ering an arsenal of weapons in the northeast bedroom, a gun in the southeast bedroom, and a gun in the kitchen, the police arrested appellant for possession of a firearm by a convicted felon.
At trial, the state sought to prove that appellant resided in his parents’ home, occupied the northeast bedroom where the majority of the weapons were found, and owned those weapons. Appellant’s defense was that he did not reside in his parents’ home and that, although he stayed there on occasion, he did not have sole possession and control of the northeast bedroom because his brother, Jesse, and ten-year-old niece also stayed in that room on occasion.
The only witness to testify on behalf of appellant was his mother, Florence Whit-taker (Mrs. Whittaker). According to her, at the time of the search, appellant resided in Hollywood, Florida, but would return every two or three days to visit. Although he did not live at the Whittakers’ home, he received some mail there and kept some of his personal belongings, including clothing, there. Mrs. Whittaker testified that many people, including appellant, had access to the northeast bedroom at that time. Her other son, Jesse, also slept in the northeast bedroom when he visited. She said that her husband owned several guns which he got from his mother.
On cross examination, the prosecutor asked Mrs. Whittaker the following:
Q. Now I understand Mr. Whittaker was home when this search took place, correct?
A. Yes.
Q. Where is Mr. Whittaker today?
A. I couldn’t say. I left him at home.
Q. And did you and he not ever discuss the possibility of him coming here to testify?
A. No.
Q. But he still lives at the house, doesn’t he?
A. Yes.
Q. And he was home when the search took place, right?
A. Yes.
Q. He was right there, he could tell us everything that you testified to, right?
A. Yes.
Q. Is he going to be called? Is he outside?
A. No.
Appellant’s request for a sidebar conference was denied, with the court stating, “[s]ave it and we’ll put it on the record.” The prosecutor continued to pursue the same line of questioning with regard to appellant’s brother, Jesse. Appellant objected and moved for a mistrial, but the court denied the motion on the basis that the state had requested that the witness be produced, but he was not.
Thereafter, Mrs. Whittaker testified that the gun which was retrieved from her bedroom belonged to her husband. Also, she knew that her husband had owned other guns through the years, but did not know where they were and could not describe which type of guns they were. She said that, prior to the night of the search, she was not aware that there was a gun in her kitchen because it was in an area which contained old utensils that she did not use very often. The prosecutor showed Mrs. Whittaker a picture of one of the guns which was retrieved from her home. She testified that it did not look like a gun her husband would own. After appellant was arrested, she had asked him about the guns, and he said he did not know how they got there. Mrs. Whittaker agreed that some of the items taken from the northeast bedroom could very well belong to appellant, but she could not say for sure.
The prosecutor then asked Mrs. Whit-taker whether her husband would know if the gun found in the kitchen was his and she replied, “You would have to ask. I don’t know if he would know.” He also asked, “[wjhen you were in my office earli *739 er we tried to call him, didn’t we.” Mrs. Whittaker said, “yes”.
Finally, despite the court’s denial of the state’s request to mention in closing argument the fact that appellant did not call certain witnesses, the prosecutor made the following argument:
All of the weapons in the room are hidden. All of the documentary evidence in the room points to Shaddy Whittaker. That was his room. That was his bed. So you start off with that, the guns. Then you think to yourself, the next thing, the guns didn’t walk themselves in there. If you are going to have a reasonable doubt, think to yourself how did they get there. What evidence have I heard to make me think that the obvious isn’t the right answer.
The defense in the case has to be one of two things. Maybe somebody else put them there or maybe the police are hiding something. Maybe there’s something else going on. I can’t see it any other way.... I don’t know what his defense is, but I think it’s fairly obvious the guns didn’t get there by themselves, somebody put them there. If it wasn’t Shaddy Whittaker, it was somebody else. And if it was somebody else and there’s evidence of that, then why don’t we have the evidence. Somebody is hiding the evidence. Most likely it would be there’s some trail, there’s some avenue leading to somebody and you are not getting to know it.
In rebuttal closing argument, the prosecutor continued, as follows:
No, the defense has absolutely no burden in this case. They don’t have to put on any witnesses. But they have the right if they want to, and they called Mrs. Whittaker. I’m entitled to comment on whether or not they have rebutted my case and they have created reasonable doubt. Again, there are two parts to this. If they are not his guns, then who[se] are they? Or if he doesn’t live there, where does he live? She says she knows where he lives. Why didn’t she come in with a phone bill, utility bill where he lives? If you live someplace for five months, there is going to be something with that new address on it and there’s not one bit of evidence.
The trial court overruled appellant’s objection to this comment stating that he chose to put on evidence, so it is a fair comment on the evidence.
We hold that the prosecutor’s questioning of Mrs. Whittaker, as well as the closing argument comments excerpted above, were clearly inappropriate. It is error for the state to comment on the defendant’s failure to produce evidence to refute an element of the crime. See generally Jackson v. State, 575 So.2d 181 (Fla.1991). To do so misleads the jury into thinking that the defendant bears the burden of proving his innocence. Id. at 188. There are limited exceptions to the rule, none of which applies in this case. Id. (comments on the defendant’s failure to produce evidence are allowed when the “defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state”).
Mrs. Whitaker was appellant’s only witness. She was called to refute the state’s position that the northeast bedroom was appellant’s, and to refute the evidence that, on the day of the search, appellant had initiated a conversation with one of the officers, and claimed ownership to the items which had been found in the house. Her testimony was not used to present an alibi, or otherwise support a claim by appellant of self defense or defense of others. Thus, it was error for the prosecutor to shift the burden of proof to appellant. Moreover, the error was harmful because appellant’s ownership of the firearms was the pivotal issue. Certainly, the jury would have questioned on its own appellant’s failure to call Mr. Whittaker or Jesse if either could claim ownership to *740 the weapons and exonerate appellant. It was not within the prosecutor’s province, however, to highlight the failure to call the witnesses, thereby suggesting that appellant bore the burden of proof. The trial court erred in denying appellant’s motion for mistrial based on prosecutorial misconduct. Accordingly, we reverse and remand for a new trial.
REVERSED AND REMANDED.
KLEIN and GROSS, JJ., concur.